IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SXSW HOLDINGS, INC. and SXSW, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  1:13-cv-00066 |
| | § | |
| CHRISTOPHER SHERMAN d/b/a ENGAGE | § | **JURY DEMANDED** |
| DIGITAL and TECH CAREER EXPO, | § | |
| SHERMAN VENTURES, LLC, and SHOW | § | |
| INITIATIVE, LLC, | § | |
| | § | |
| Defendants. | § | |

**COMPLAINT FOR TRADEMARK INFRINGEMENT AND DILUTION, FALSE
ADVERTISING, UNFAIR COMPETITION, UNJUST ENRICHMENT,
AND BREACH OF CONTRACT**

SXSW Holdings, Inc. and SXSW, LLC, appearing through their undersigned counsel, allege, on information and belief, as follows:

**NATURE OF ACTION AND JURISDICTION**

1.      This is an action for trademark infringement, unfair competition, trademark dilution, and false advertising under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* ("Lanham Act"); for trademark dilution under Chapter 16 of the Texas Business and Commerce Code; and for trademark infringement, unfair competition, unjust enrichment, and breach of contract under Texas common law.

2.      This Court has jurisdiction over this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121; Title 28 of the United States Code, 28 U.S.C. §§ 1331, 1338 and 1367; and the principles of pendent jurisdiction.

3.     This Court has personal jurisdiction over Defendants.  Defendants have engaged in a continuous and systematic course of doing business in Texas, and a substantial portion of the activities complained of herein have occurred and continue to occur in this District.

**PARTIES**

4.     SXSW Holdings, Inc. (formerly known as SXSW, Inc.) is a corporation organized under the laws of the State of Texas with its principal place of business in Austin, Texas. Effective midnight, December 31, 2012, the operating assets of SXSW, Inc. were assigned to a newly formed Texas limited liability company, SXSW, LLC, which is managed by SXSW Holdings, Inc. and has a principal place of business in Austin, Texas.  Concurrently with that assignment, the corporate name of SXSW, Inc. was changed to SXSW Holdings, Inc.  SXSW Holdings, Inc. and SXSW, LLC are referred to collectively herein as "SXSW" or "Plaintiffs."

5.     SXSW is informed and believes, and on that basis alleges, that Defendant Christopher Sherman ("Sherman") is a citizen of Texas residing at 170 Sunrise Terrace, Cedar Park, Texas 78613.  On information and belief, Christopher Sherman also does business under the names Engage Digital and Tech Career Expo.

6.     SXSW is informed and believes, and on that basis alleges, that Defendant Sherman Ventures, LLC ("Sherman Ventures") is a Texas limited liability company with a principal place of business at 1230 Fall Creek Loop, Cedar Park, Texas 78613.  On information and belief, Sherman is the President and registered agent of Sherman Ventures.

7.     SXSW is informed and believes, and on that basis alleges, that Defendant Show Initiative, LLC ("Show Initiative") is a Texas limited liability company with a principal place of business at 1230 Fall Creek Loop, Cedar Park, Texas 78613.   On information and belief,

Sherman is the Director of Show Initiative and Sherman Ventures is the registered agent of Show Initiative.

8.     Christopher Sherman d/b/a Engage Digital and Tech Career Expo, Show Initiative, LLC, and Sherman Ventures, LLC  are referred to collectively herein as "Defendants."

**FACTS**

**A.     PLAINTIFFS AND THEIR TRADEMARKS**

9.     SXSW is the founder and organizer of the South By Southwest Music, Film, and Interactive Festivals (collectively, the "SXSW Festival").  Since the SXSW Festival was first held in Austin, Texas in 1987, the SXSW Festival has grown exponentially to become one of the world's foremost annual events in the fields of music, film, and technology, drawing thousands of participants and hundreds of thousands of attendees to Austin each year.  The SXSW Festival is the highest revenue-producing special event for the Austin economy, and had an estimated economic impact of $190 million in 2012 alone.

10.     An integral component of the SXSW Festival is the South By Southwest Interactive Festival (the "SXSW Interactive Festival"), which is an incubator of cutting-edge technologies and digital creativity.   The SXSW Interactive Festival features numerous networking events hosted by industry leaders, as well as compelling presentations from the brightest minds in emerging technologies.

11.     SXSW has a long history of matching job seekers with available opportunities. SXSW's networking and job-related events, which date back to at least 1999 and are incorporated throughout the SXSW Festival, include but are not limited to the following:

- A "Job Handbook" soliciting and distributing resumes;

- The 2011 "SXSW Hiring Hub" with both an online presence (partnering with Monster.com) and a large physical space within the SXSW Trade Show;

- The "SXSW Job Board" located inside the SXSW Trade Show;

- Numerous job panels throughout the SXSW Festival; and

- The upcoming 2013 "Future Plans College and Career Fair" and "Digital Creative Job Market."

12.     SXSW has for many years used the marks SXSW, SOUTH BY SOUTHWEST, SOUTH BY, SXSWEEK, SXSWORLD, and other related marks and logos, such as the distinctive logo shown below (collectively, the "SXSW Marks"), in connection with the SXSW Festival, the provision of food and beverages, catering services, travel-related services, and the provision of merchandise and publications associated with these services.



Interactive-industry participants, corporate sponsors, festival-goers, and SXSW itself often refer to the SXSW Festival as "SXSW," "SOUTH BY SOUTHWEST," and/or "SOUTH BY."

13.     In addition to its extensive common law rights, Plaintiffs also own the following federal trademark registrations for their SXSW Marks:

| MARK | REGISTRATION NO. REGISTRATION DATE | GOODS/SERVICES |
|---|---|---|
| **SOUTH BY SOUTHWEST** | 2,273,216<br><br>08/31/99 | Educational and entertainment services, namely, conducting conferences, festivals and seminars in the fields of music, film, video, computer and multimedia (Class 41) |
| **SOUTH BY SOUTHWEST** | 3,765,211<br><br>3/23/10 | Providing food and drink; making reservations for others for temporary lodging accommodations; providing a website for booking temporary lodging; providing a website featuring information on hotel and temporary accommodations for travel; catering services; providing banquet and social function facilities; provision of conference and meeting facilities. (Class 43) |
| **SXSW** | 2,043,596<br><br>03/11/97 | Educational and entertainment services, namely conducting conferences, festivals and seminars in the fields of music, film, video, computer and multimedia (Class 41) |
| **SXSW** | 2,509,383<br><br>11/20/01 | T-shirts, tank tops and hats (Class 25) |
| **SXSWEEK** | 2,313,345<br><br>02/01/00 | Educational and entertainment services, namely conducting conferences, festivals and seminars in the fields of music, film, video, computer and multimedia (Class 41) |
| **SXSWORLD** | 3,348,560<br><br>12/4/07 | Magazines featuring entertainment content and news, commentary, and information regarding the entertainment, media, information technology and multimedia technology industries (Class 16) |

| MARK | REGISTRATION NO. REGISTRATION DATE | GOODS/SERVICES |
|---|---|---|
| **SXSWORLD** | 3,494,119 <br><br> 8/26/08 | Downloadable electronic magazines featuring entertainment content and news, commentary, and information about the entertainment, media, information technology and multimedia technology industries (Class 9) <br><br> Providing online electronic magazines featuring entertainment content and news, commentary, and information about the entertainment, media, information technology and multimedia technology industries (Class 41) |
| **SXSWEDU** | 3,970,209 <br><br> 5/31/11 | Educational and entertainment services, namely conducting conferences and seminars in the fields of education and technology (Class 41) |

Attached as **Exhibit A** are true and correct print-outs of records for these registrations from the Trademark Electronic Search System (TESS) database of the United States Patent and Trademark Office website.

14.     The SXSW Marks are inherently distinctive and serve to identify and indicate the source of SXSW's products and services to the consuming public.

15.     SXSW has spent significant sums advertising and promoting its SXSW Marks and the goods and services sold thereunder.  As a result of these efforts and the widespread success of the various festivals, conferences, and events sponsored by SXSW, the SXSW Marks have become famous, and have come to identify the products and services of SXSW in the minds

of consumers and of other individuals working in many aspects of the technology industry around the world.

16.     As a result of SXSW's long use and promotion of the SXSW Marks, SXSW has acquired valuable common law rights in the SXSW Marks.

17.     SXSW's goodwill and the SXSW Marks are important assets of SXSW, and SXSW cannot afford to permit another person to use the SXSW Marks in a way that would dilute the distinctiveness of the SXSW Marks, or cause confusion as to that person's sponsorship or affiliation with, or endorsement by, SXSW.

**B.      DEFENDANTS' INFRINGING ACTIVITIES**

18.     Defendants are providers of specialized trade events and related media doing business in the Austin, Texas area and elsewhere.

19.     Prior to the 2012 SXSW Festival, Sherman entered into a written contract with SXSW entitled "2012 SXSW Logo Use License Agreement."   The license agreement granted Sherman a royalty-free, non-exclusive license to use the SXSW Marks in connection with a "Tech Career Expo at SXSW on March 9-10, 2012."   A copy of the agreement is attached as **Exhibit B** (the "License").

20.     The License, which terminated on March 31, 2012, also included the following provision for Defendants' use of the SXSW Marks following the 2012 SXSW Festival: "Licensee agrees that it will not use the Marks after the term of this license expires, or for any goods and services not listed in this license, without the prior written approval of SXSW." Sherman signed the agreement on December 21, 2011, listing his company name as "Show Initiative / Engage Digital."

21.    Despite this provision, Defendants have recently organized, sponsored, and promoted a 2013 "Tech Career Expo" event using the SXSW Marks.  Defendants boast that their event is "one block from the Austin Convention Center," which is the hub of SXSW activities.  Defendants' 2013 event, however, is not sponsored by or affiliated with SXSW.  Nor have Defendants ever received "prior written approval" from Plaintiffs to use the SXSW Marks.

22.    In promoting the 2013 event, which is in direct competition with Plaintiffs' networking and job-fair events, Defendants use the famous SXSW mark throughout their materials in a manner suggesting that they and the event remain affiliated with SXSW.  For instance, Defendants have prominently used the SXSW Marks on their website and in their promotional materials.  In fact, the famous SXSW mark is used over a dozen times just on the main page of Defendants' website, and the "Press" page of Defendants' site uses the SXSW mark nearly two-dozen times, more—incredibly—than the name of Defendants' event ("Tech Career Expo").  Representative copies of Defendants' website and promotional material are attached as **Exhibit C**.

23.    In addition, a number of Defendants' advertisements and promotional material reference "Tech Career Expo @ SXSW 2012" and display the 2012 SXSW logo shown in paragraph 13 above, which only increases the likelihood that consumers will believe the 2013 "Tech Career Expo" event remains sponsored by or affiliated with SXSW.  Indeed, several consumers, including at least one person and two major companies with longstanding ties to SXSW, have already expressed such confusion.  One stated that she planned to attend Defendants' 2013 "SXSW Tech Career Expo," while one of the major companies informed Plaintiffs that they "booked for the other SXSW job fair," later clarifying that they meant Defendants' 2013 Tech Career Expo event.  Similarly, another company thought that it had

signed up for SXSW's 2013 Digital Creative Job Market, but had actually signed up for Sherman's 2013 Tech Career Expo event.  These instances of confusion are occurring in spite of—or are being aggravated by—a statement on Defendants' website disclaiming affiliation with SXSW.

24.     Defendants are not affiliated with or sponsored by SXSW and have not been authorized by SXSW to use the SXSW Marks or any confusingly similar marks.  As is often the case in trademark infringement matters, Defendants' use of the disclaimer is itself confusing, contradictory, and insufficient to prevent confusion.

25.     Defendants are using the SXSW Marks in commerce.  Defendants' use of the SXSW Marks began long after SXSW had established rights in the SXSW Marks, and after those marks had become famous.

26.     SXSW has notified Defendants, in particular Sherman, numerous times of SXSW's rights in the SXSW Marks, and made numerous attempts to resolve this dispute with Sherman prior to filing this lawsuit.  Despite SXSW's attempts to resolve this matter amicably, Defendants have not ceased using the SXSW Marks or promoting the 2013 event in a manner suggesting some affiliation or sponsorship with SXSW.

## C.     EFFECT OF DEFENDANTS' ACTIVITIES

27.     Defendants' unauthorized use of the SXSW Marks is likely to cause confusion, to cause mistake, and/or to deceive customers and potential customers of the parties at least as to some affiliation, connection or association of Defendants with SXSW, or as to the origin, sponsorship, or approval of Defendants' services by SXSW.  Indeed, Defendants' unauthorized use has already resulted in at least three consumers expressing actual confusion as to some affiliation between SXSW and Defendants.

28.     Defendants' unauthorized use of the SXSW Marks falsely designates the origin of their services, and falsely and misleadingly describes and represents facts with respect to Defendants and their services.

29.     Defendants' unauthorized use of the SXSW Marks enables Defendants to trade on and receive the benefit of goodwill built up at great labor and expense by SXSW over many years, and to gain acceptance for their services not solely on their own merits, but on the reputation and goodwill of SXSW, its SXSW Marks, and its products and services.

30.     Defendants' unauthorized use of the SXSW Marks is likely to dilute the distinctive quality of the SXSW Marks.

31.     Defendants' unauthorized use of the SXSW Marks unjustly enriches Defendants at SXSW's expense.  Defendants have been and continue to be unjustly enriched by obtaining a benefit from SXSW by taking undue advantage of SXSW and its goodwill.  Specifically, Defendants have taken undue advantage of SXSW by trading on and profiting from the goodwill in the SXSW Marks developed and owned by SXSW, resulting in Defendants wrongfully obtaining a monetary and reputational benefit for their own business and services.

32.     Defendants' unauthorized use of the SXSW Marks removes from SXSW the ability to control the nature and quality of products and services provided under the SXSW Marks, and places the valuable reputation and goodwill of SXSW in the hands of Defendants, over whom SXSW has no control.

33.     Defendants' false and misleading advertising claims deceive and/or have a tendency to deceive a substantial segment of the intended audience.

34.     Defendants' false and misleading advertising claims are material and likely to influence the purchasing decisions of consumers.

35.     Defendants' false and misleading advertising claims have damaged, are damaging, and are likely to continue damaging and causing irreparable injury to SXSW.

36.     Unless these acts of Defendants are restrained by this Court, they will continue, and they will continue to cause irreparable injury to SXSW and to the public for which there is no adequate remedy at law.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT

37.     Plaintiffs repeat the allegations above as if fully set forth herein.

38.     The acts of Defendants complained of herein constitute infringement of SXSW's federally registered SXSW Marks in violation of 15 U.S.C. § 1114(1).

39.     Defendants' acts complained of herein have been deliberate, willful, intentional, or in bad faith, with full knowledge and conscious disregard of SXSW's rights in the SXSW Marks, and with intent to cause confusion and to trade on SXSW's vast goodwill in the SXSW Marks.  In view of the egregious nature of Defendants' infringement, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

## COUNT II: VIOLATION OF LANHAM ACT § 43(A)

40.     Plaintiffs repeat the allegations above as if fully set forth herein.

41.     The acts of Defendants complained of herein constitute trademark infringement, false advertising, false designation of origin and false or misleading descriptions or representations of fact, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

42.     Defendants' acts of trademark infringement, false designations of origin, false advertising, and unfair competition have been willful and in bad faith, making this an exceptional case under 15 U.S.C. § 1117(a).

## COUNT III: FEDERAL TRADEMARK DILUTION

43.      Plaintiffs hereby repeat the allegations above as if fully set forth herein.

44.      The conduct of Defendants complained of herein constitutes dilution of SXSW's famous SXSW Marks in violation of 15 U.S.C. § 1125(c).

## COUNT IV:  DILUTION UNDER TEXAS LAW

45.      Plaintiffs repeat the allegations above as if fully set forth herein.

46.      The acts of Defendants complained of herein constitute dilution of SXSW's famous SXSW Marks in violation of Texas Business and Commerce Code § 16.103.

## COUNT V: COMMON LAW TRADEMARK INFRINGEMENT

47.      Plaintiffs repeat the allegations above as if fully set forth herein.

48.      The acts of Defendants complained of herein constitute trademark infringement in violation of the common law of the State of Texas.

## COUNT VI: COMMON LAW UNFAIR COMPETITION

49.      Plaintiffs repeat the allegations above as if fully set forth herein.

50.      The acts of Defendants complained of herein constitute unfair competition in violation of the common law of the State of Texas.

## COUNT VII: UNJUST ENRICHMENT

51.      Plaintiffs repeat the allegations above as if fully set forth herein.

52.      The acts of Defendants complained of herein constitute unjust enrichment of Defendants at the expense of SXSW.

## COUNT VIII: BREACH OF CONTRACT

53.      Plaintiffs repeat the allegations above as if fully set forth herein.

54.      Defendants' use of the SXSW Marks violates the terms of the License.

55.     The acts of Defendants complained of herein constitute breach of contract in violation of the common law of the State of Texas.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that:

(a)     Defendants, and any other persons who are in active concert or participation with Defendants, be permanently enjoined and restrained from using the SXSW Marks and any other mark or logo confusingly similar to or likely to cause dilution of the SXSW Marks, from organizing, sponsoring, or promoting any event likely to confuse consumers into believing such event is affiliated or associated with SXSW, or that falsely or misleadingly suggests such an association, and from any attempt to retain any part of the goodwill misappropriated from SXSW;

(b)     Defendants, and any other persons in active concert or participation with Defendants, be enjoined from publishing, disseminating, or otherwise using the materials and advertisements complained of herein, and any other materials that falsely or misleadingly: (1) claim or suggest any affiliation or association between Defendants and SXSW; or (2) claim or suggest that Defendants' Austin, Texas event(s) is sponsored or sanctioned by SXSW;

(c)     Defendants, and any other persons who are in active concert or participation with Defendants, be required to deliver up and destroy all labels, signs, badges, prints, packages, advertisements, commercials, Internet postings and advertisements, and other promotional materials bearing or using the SXSW Marks and/or any other false and misleading advertising claim, and all plates, molds, matrices, and other means of making the same;

(d)     Defendants be ordered to file with this Court and to serve upon Plaintiffs, within thirty (30) days after the entry and service on Defendants of an injunction, a report in writing and

under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

(e)     Plaintiffs recover all damages they have sustained as a result of Defendants' activities, and that said damages be trebled;

(f)     An accounting be directed to determine Defendants' profits resulting from its activities and that such profits be paid over to Plaintiffs, increased as the Court finds to be just under the circumstances of this case;

(g)     Plaintiffs recover their reasonable attorney fees;

(h)     Plaintiffs recover their costs of this action and prejudgment and post-judgment interest; and

(i)     Plaintiffs recover such other relief as the Court may deem appropriate.

## **JURY DEMAND**

Plaintiffs demand a jury trial in accordance with Federal Rule of Civil Procedure 38(b).


DATED:  January 24, 2013                    Respectfully submitted,


                                         By:  /s/ Stephen P. Meleen
                                            Stephen P. Meleen
                                            State Bar No. 00795776
                                            Jered E. Matthysse
                                            State Bar No. 24072226
                                            Pirkey Barber PLLC
                                            600 Congress Avenue, Suite 2120
                                            Austin, TX  78701
                                            (512) 322-5200

                                            ATTORNEYS FOR PLAINTIFFS